**FILED**

May 28 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ alshahs          DEPUTY

1

2  Anton Ewing (*pro se*)
3077 Clairemont Drive #372
San Diego, CA 92117
3  anton@antonewing.com.
(619)719-9640
4

5  Plaintiff

6

7

8

9  ## THE UNITED STATES FEDERAL DISTRICT COURT

10

11  ## SOUTHERN DISTRICT OF CALIFORNIA

12

13  Anton Ewing, an individual,                )   Civil Case No.:   **'19CV994  LAB WVG**

14                                             )
                 Plaintiff,                    )   **COMPLAINT**
15                                             )

16         vs.                                 )

17                                             )   **TCPA 47 USC §227(b)(1)(A)**
    Kabbage, Inc., a Delaware corporation      )
18                                             )   **TCPA 47 USC §227(c)(5)**
                                               )
19                                             )
                 Defendant.                    )
20                                             )

21                                             )

22                                             )

23         Plaintiff Anton Ewing ("Plaintiff"), complains against Defendant Kabbage,

24  Inc., a Delaware corporation ("KABBAGE") and alleges as follows:

25  ## I.      INTRODUCTION

1.     Kabbage was previously sued in a TCPA class action in the Middle District

of Florida on 2/18/2016 in 16-cv-00143-SPC-CM, *Scoma vs. Kabbage, Inc, et al.*

Apparently Kabbage did not get the hint.  Perhaps Kabbage should try eating carrots with vitamin A so they can clearly see that Americans do not like, want or desire harassing telemarketing calls.  This lawsuit promises to be a cure for the defendant's blindness toward obeying the law.

2.      Kabbage was sued in yet another TCPA class action on 2/23/2016 in the Northern District of Illinois in 16-cv-02513, *Custom Heating vs. Kabbage, Inc, et al*.

3.      Tyler Green is an employee of Defendant Kabbage, Inc.

4.      Tyler Green sent Plaintiff a text message to sell Plaintiff a loan on May 24, 2019 from 877-206-4140 to 619-719-9640.

5.      Tyler Green called Plaintiff three times on May 24, 2019 to sell Plaintiff a loan from 877-206-4140 to 619-719-9640.

6.      Tyler Green threatened to kill Plaintiff if Plaintiff filed this lawsuit.  Plaintiff calls Tyler Green's bluff and invites Tyler Green to go ahead and attempt to kill Plaintiff.

7.      Tyler Green sent Plaintiff an email from aaron@offshorestaffingsolutions.com to Plaintiff with a link to: "Application Form:  https://www.kabbage.com/?refid=TCG_OC_JA" on May 24, 2019 at 9:30 AM.

8.      Tyler Green admitted, on May 24, 2019, that he recorded the telemarketing

calls that he made to Plaintiff on behalf of Defendant Kabbage, Inc.

9.     Local Rule 83.4 regarding civility and its prohibition against attorneys making derogatory statements about Plaintiff that disparages the intelligence, ethics, morals, integrity or behavior of Plaintiff Ewing, applies to Defendant's attorney.

10.    Local Rule 83.4 can be found at:

https://www.casd.uscourts.gov/_assets/pdf/rules/Local%20Rules.pdf

11.    Defendant's attorney has read Local Rule 83.4 and agrees to not harass, intimidate, or disparage Ewing.

12.    Defendant's attorney is subject to and bound by California Business & Professions Code section 6128 regarding criminal deceit by an attorney.

13.    Defendant's attorney agrees to not commit criminal deceit in his dealings with Plaintiff.

14.    If Defendant's attorney makes any derogatory remarks in his pleadings toward Plaintiff, then Plaintiff will file a State Bar complaint, move for Rule 11 sanctions and will ask the Court to refer said attorney to the Federal Bar standing committee on discipline.  See General Order 708 adopted 4/12/2019

15.    KABBAGE began harassing Plaintiff on or about May 24, 2019.  As this Court knows, Plaintiff can be very vocal toward telemarketers and this one was also memorable.  To put it mildly, Plaintiff was rather stern and vocal with

Defendant back on May 24, 2019 and was very clear about never telemarketing him ever again.   Then Defendant called again and again.  Since Defendant did not wise up, back off or cease and desist, this lawsuit resulted.  Defendant just doesn't get it.

16.    After the May 24, 2019 call, Plaintiff received several an email from "Aaron Jones" using aaron@offshorestaffingsolutions.com on May 24, 2019.  Tyler Green was very caustic and derogatory toward Plaintiff.

17.    On May 24, 2019, Defendant called again, from the same number as the above stated May 24, 2019 call, using 877-206-4140 to Plaintiff's phone at 619-719-9640.

18.    The May 24, 2019 call was not the first call.  Plaintiff knows this because of what the employee on the other end of the phone was stating.  Defendant's statements showed that Defendant must have called prior or must have paid and hired and controlled some other contracted agent of theirs to call Plaintiff previously.  When Tyler Green called, he stated Plaintiff's name (or rather the name that Plaintiff gives to scum-telemarketers when they call).

19.    Often telemarketers higher controlled third parties to do their initial illegal calling in violation of the TCPA.  The initial lead source always plays coy and will not divulge who they are or who they are working for.  That in and of itself is a violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC

§227(c)(5). The only way that Plaintiff can find out who the TCPA violator is, is to fain interest and "play along" on the call as the telemarketer reads the script and illegally records the responses so they can sell the lead to Defendant KABBAGE. It is a disgusting business and Plaintiff is going to put a stop to it.

20.     The volume of illegal telemarketing calls in this country is skyrocketing. Something must be done. Plaintiff is doing something about it.

21.     The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only way this, this act is going to get any teeth in it at all is through a serial litigant."

22.     Judge Kenney was referring to the TCPA when he made this above statement on the record. See attached.

23.     Defendant directly called Plaintiff on his DNC registered cell phone in violation of the TCPA.

24.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Kabbage, Inc.

25.     Kabbage, Inc. has been illegally calling Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS. Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and

damages will encourage Kabbage, Inc., to change their ways.  To be clear, Plaintiff is suing KABBAGE for the directly dialed calls.  There were other calls through lead generators but this lawsuit is for the direct autodialed calls.

26.     The Defendant will hand over the lead source in discovery.

27.     Defendant Kabbage, Inc paid Tyler Green $250 for making the above stated illegal calls to Plaintiff.

## II. PARTIES

28.     Plaintiff Anton Ewing is a citizen of California who resides in California, in this District.

29.     Defendant Kabbage, Inc., a Delaware corporation with its corporate office at 730 Peachtree St NE, Suite 1100, Atlanta, Georgia, and is registered in and doing business in California.  KABBAGE is managed by Robert Frohwein.

30.     Robert Frohwein is a shareholder of KABBAGE and its CEO.

31.     Tyler Green is an employee of KABBAGE, calls himself an Executive Account Manager and engages in telephone solicitations for and on behalf of KABBAGE.

32.     Tyler Green and Aaron Jones have made hundreds of telemarketing solicitation calls on behalf of KABBAGE.

33.     Aaron Jones is a telemarketing agent of KABBAGE.   Aaron Jones is an employee of KABBAGE.

34.    Tyler Green called Plaintiff.

35.    Tyler Green sent a text message to Plaintiff.

36.    Tyler Green did not have permission or consent to call or text Plaintiff.

### III. JURISDICTION AND VENUE

37.    This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

38.    This Court has personal jurisdiction over KABBAGE, INC. because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, KABBAGE, INC. made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Kabbage, Inc. has also subjected themselves to personal jurisdiction in California because they are running and abetting said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Kabbage, Inc. through their dba's and agents, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to Kabbage, Inc. marketers and others within the organization in a knowingly illegal manner.

39.    Plaintiff was called on cell phone of 619-719-9640 by Kabbage, Inc. Plaintiff was called multiple times beginning on or about May 24, 2019, from 877-206-4140, a number owned, used and controlled by Kabbage, Inc. and its agents,

with a prerecorded message which then transferred to a live human.  The initial part of the call was a pre-recorded message.  After many personal questions were asked and answered, the call was transferred to another Kabbage, Inc. person who repeated the same questions.   Defendant's employee asked if Plaintiff was interested in merchant cash advances or business loans.

40.    KABBAGE did not have consent or permission to call Plaintiff.

41.    Plaintiff has expressly stated exactly what phone number Defendant used to call Plaintiff, as well as an exact date of one of the calls, to which number the calls were made, what was said on the call and that the call was made with an ATDS and prerecorded message.  All of this meets the particularity requirements for a cause of action.

42.    Plaintiff's phone number is not a business phone.

43.    Plaintiff's phone is registered on www.donotcall.gov and was done so more than 31 days prior to the first call.

44.    Defendant called Plaintiff on May 14, 2019 from 877-206-4140 at 9:24 AM, 10:40 AM, and 11:57 AM to 619-719-9640.  Said calls were solicitations.

### IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

45.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

46.    The TCPA makes it unlawful to make telemarketing solicitations to

telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47

C.F.R. § 64.1200(c)(2).

47.     The TCPA provides a private cause of action to persons who receive calls in

violation of § 227(c). 47 U.S.C. § 227(c)(5).

48.     Plaintiff Ewing alleges that Defendant Kabbage, Inc. placed repeated

automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from

their phones and that the calls exhibited signs of being made with an Automated

Telephone Dialing System, including repeated telemarketing calls to Plaintiff

Ewing within a period of time from October 2018 to May 24, 2019 and the

presence of a pause or click (which is proven by the recording), which is

commonly associated with an Automated Telephone Dialing System (ATDS).

Those allegations are true and are sufficient to establish the elements of a TCPA

claim.  There was a long delay when the calls connected every time and Plaintiff

heard a bubble popping sound right before the prerecorded message started.

## V. STANDING

49.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

50.    Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendant;

    C. and is likely to be redressed by a favorable judicial decision.  See,

        *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

51.    Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in

*Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least five times by Defendant.  In fact, Plaintiff expressly informed Defendant to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well, Plaintiff had no prior business relationship with Defendant prior to receiving the seriously harassing and annoying calls by Kabbage, Inc.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls.  It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

52.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendant directly, or by Defendant's agent at the express direction and control of Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

53.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution

have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendant on the stated claims.

54.    "...[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016). In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

55.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite

distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

56.     Here, Plaintiff alleges that Defendant Kabbage, Inc. contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message

that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant KABBAGE's product. Third, Plaintiff declares that he has never heard of Defendant KABBAGE, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendant KABBAGE nor has he ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendant used ATDS in sending their prerecorded solicitation messages. Plaintiff does not own video or drone business and therefore could not possibly purchase loan services from Defendant.

57.   In Plaintiff's case, the allegations establish that he did not give prior express consent. He declared that he was "the regular user and subscriber to the cellular telephone number at issue." He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendant to send the prerecorded messages.

# VI. FACTUAL ALLEGATIONS

## A. Kabbage, Inc.

58.    One of KABBAGE, INC.'s strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

59.    KABBAGE, INC. uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

## B. Plaintiff

60.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## C. Telephone number 619-719-9640

61.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

62.    619-719-9640 is on the National Do Not Call Registry.

63.    Mr. Ewing answers calls made to 619-719-9640.

64.    Mr. Ewing pays the phone bills for 619-719-9640.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

65.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66.     The foregoing acts and omissions of Kabbage, Inc. and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

67.     The defendant in this matter is vicariously liable for the acts and actions of the lead source under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  Discovery will reveal the name of the lead agent.  KABBAGE controlled the lead agent and had actual knowledge of the TCPA violations.  The three other TCPA lawsuits are evidence of this knowing and willful conduct.

68.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

69.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

70.     Plaintiff also seeks a permanent injunction prohibiting KABBAGE, INC. and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(B))

71.     Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

72.     The foregoing acts and omissions of KABBAGE, INC. and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the personal telephone 619-719-9640 number of Mr. Ewing without prior express written consent.

73.     Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

74.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

75.     Mr. Ewing also seeks a permanent injunction prohibiting KABBAGE, INC., and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

### (Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))

76.     Plaintiff realleges and incorporate by reference each and every allegation set forth in the preceding paragraphs.

77.     The foregoing acts and omissions of KABBAGE, INC. and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

78.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

79.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

80.     Plaintiff also seeks a permanent injunction prohibiting KABBAGE, INC. and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. EXHIBITS

81.     Exhibit A is a true and accurate copy of Class action compliant between Scoma Chiropractic vs. Celtic Bank, a Utah industrial bank, Kabbage Inc.

82.     Exhibit B is a true and accurate copy of Kabbage Inc., corporation details, along with the registered agent information.

83.     Exhibit C is a true and accurate copy of the General Order No. 708, signed by the Honorable Chief Judge Larry Alan Burns, and the Honorable Judge Dana M. Sabraw.

84.     Exhibit D is a true and accurate copy of Kabbage facebook page, Kabbage website, and Kabbage California statement information.

85.     Exhibit E is a true and accurate copy of Rob Frohwein LinkedIn profile.

86.     Exhibit F is a true and accurate copy of text message from Tyler.

87.     Exhibit G is a true and accurate copy of Offshore Staffing Solutions, LLC status, policy, and email from Aaron Jones.

88.     Exhibit H is a true and accurate copy of Order Granting in part and denying in part Plaintiffs' Fourth Motion for Default Judgement in Case No.16cv2415, signed by the Honorable District Judge Gonzalo P. Curiel.

89.     Exhibit I is a true and accurate copy of LexisNexis excerpt from the Gomez and Crunch case.

90.     Exhibit J is a true and accurate copy of Civil Case No. 2:18-cv-02071, James Everett Shelton v. Fast Advance Funding, LLC.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for this Honorable Court to enter judgment against all Defendant as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by KABBAGE, INC. violate the TCPA;

C. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

D. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

E. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

F. For an injunction prohibiting all Defendant from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

G. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

H. $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

I. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

J. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

K. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

L. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

M. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

N. For any other relief that the Court deems just and proper.

## XII. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  May 28, 2019

Anton Ewing,
Plaintiff

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SCOMA CHIROPRACTIC, P.A. a Florida )
corporation, individually and as the )
representative of a class of similarly- )
situated persons, )
                              )    Civil Action No.:
                Plaintiff, )
                              )    **CLASS ACTION**
             v. )
                              )
CELTIC BANK, a Utah industrial bank, )
KABBAGE, INC., LOANME, INC. and )
JOHN DOES 1-10, )
                              )
               Defendants. )

## CLASS ACTION COMPLAINT

      Plaintiff, SCOMA CHIROPRACTIC, P.A. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, CELTIC BANK, KABBAGE, INC., LOANME, INC. and JOHN DOES 1-10 ("Defendants"):

### PRELIMINARY STATEMENT

      1.     This case challenges Defendants' practice of sending unsolicited facsimiles.

      2.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation. Upon

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| A CUSTOM HEATING & AIR CONDITIONING, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 16-CV-2513 |
| KABBAGE, INC., CELTIC BANK CORPORATION, GULFCO LEASING LLC, MICHAEL HENRY, and JOHN DOES 1-12, | ) ) ) ) ) |
| Defendants. | ) |

### CLASS ACTION COMPLAINT

Plaintiff, A Custom Heating & Air Conditioning, Inc. ("Custom"), brings this action on behalf of itself and all others similarly-situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Kabbage, Inc. ("Kabbage"), Celtic Bank Corporation ("Celtic"), Gulfco Leasing LLC ("Gulfco"), Michael Henry ("Henry") and John Does 1-12 , (collectively "Defendants"):

### PRELIMINARY STATEMENT

1.      This case challenges Defendants' practice of faxing unsolicited advertisements that advertise products or services provided by Defendants.

Exhibit B

Delaware.gov                                                                                   Governor | General Assembly | Courts | Elected Officials | State Agencies

Department of State: Division of Corporations

Allowable Characters

| HOME | | | |
|---|---|---|---|
| About Agency | | | |
| Secretary's Letter | | Entity Details | |
| Newsroom | | | |
| Frequent Questions | | | |
| Related Links | | THIS IS NOT A STATEMENT OF GOOD STANDING | |
| Contact Us | | | |
| Office Location | File Number: | 4917464 | Incorporation Date / 12/22/2010 |
| | | | Formation Date: (mm/dd/yyyy) |
| SERVICES | | | |
| Pay Taxes | Entity Name: | KABBAGE, INC. | |
| File UCC's | | | |
| Delaware Laws Online | Entity Kind: | Corporation | Entity Type: General |
| Name Reservation | | | |
| Entity Search | Residence: | Domestic | State: DELAWARE |
| Status | | | |
| Validate Certificate | | | |
| Customer Service Survey | REGISTERED AGENT INFORMATION | | |

INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and Fees               Name:          CORPORATION SERVICE COMPANY
Taxes
Expedited Services               Address:       251 LITTLE FALLS DRIVE
Service of Process
Registered Agents                City:          WILMINGTON              County:    New Castle
Get Corporate Status
Submitting a Request             State:         DE                      Postal Code:   19808
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents   Phone:   302-636-5401

Additional information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.
Would you like ◉ Status ○ Status, Tax & History Information

[ Submit ]

[ View Search Results ]              [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map   |   privacy   |   about this site   |   contact us   |   translate   |   delaware.gov



GEORGIA
CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE
BRAD RAFFENSPERGER

HOME (/)

**BUSINESS SEARCH**

BUSINESS INFORMATION

| | |
|---|---|
| Business Name: | **KABBAGE, INC.** |
| Business Type: | **Foreign Profit Corporation** |
| Business Purpose: | **NONE** |
| Principal Office Address: | **730 Peachtree Street, Suite 1100, Atlanta, GA, 30308, USA** |
| Jurisdiction: | **Delaware** |

| | |
|---|---|
| Control Number: | **10089009** |
| Business Status: | **Active/Compliance** |
| Date of Formation / Registration Date: | **12/22/2010** |
| Last Annual Registration Year: | **2019** |

REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | **Corporation Service Company** |
| Physical Address: | **40 Technology Parkway South, #300, Norcross, GA, 30092, USA** |
| County: | **Gwinnett** |

OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| L. Scott Askins | Secretary | 730 Peachtree St NE, Suite 1100, Atlanta, GA, 30308, USA |
| Rob J. Frohwein | CEO | 730 Peachtree St NE, Suite 1100, Atlanta, GA, 30308, USA |
| Scott Rosenberg | CFO | 730 Peachtree St NE, Suite 1100, Atlanta, GA, 30308, USA |

Back

Filing History     Name History     Return to Business Search

Exhibit C

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

FILED

APR 1 2 2019

CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

In the matter of                    )
                                    )          General Order No. 708
**ADOPTING DISCIPLINARY**           )
**COMMITTEE**                       )
                                    )
_____)

        Pursuant to Civil Local Rule 83.5.c, providing for the appointment of a Standing Committee on Discipline, the following members of the bar are designated to serve on such committee until further order of this Court:

        Michael Attanasio, Chair (for a period of at least two years)
        Robert W. Brownlie
        Ezekiel E. Cortez
        Daniel E. Eaton
        Radmila A. Fulton
        Diane Gibson
        Randy Kay
        Gary T. LaFleur
        Frank J. Ragen

        *   *   *

        IT IS SO ORDERED.

Dated: 04/12/2019

_____            _____
LARRY ALAN BURNS,                   DANA M. SABRAW, Judge
Chief Judge                         United States District Court
United States District Court

Exhibit D



Apply Now

Menu



Business Loans   Company   Resources   Support   Apply Now   **Sign In**

Terms of Service ›

Kabbage Privacy Policy ›

Celtic Privacy Policy ›

Industry Policy ›

# Kabbage Privacy Policy

February 1st, 2018

## General

This Privacy Policy applies when you access or use www.kabbage.com, or any other Kabbage® online service or mobile application (collectively, the "Site"), which is owned or administered by Kabbage, Inc. ("we", "us" and "our") for the benefit of Celtic Bank Corporation ("Celtic Bank"), a Utah-chartered industrial bank, member FDIC. We, as the administrator, and Celtic Bank, as the lender, respect the privacy of businesses and their owners or principals (collectively, "you" or "your") and are committed to protecting the information that we or Celtic Bank collect from you. This Privacy Policy describes how we collect, store, use and protect information that you provide, directly in connection with your use of the Site or indirectly through third-parties, to obtain small business funding products or services available through the Site, including Kabbage® Small Business Loans issued by Celtic Bank. This Privacy Policy also describes your choices regarding your information. We may amend this Privacy Policy from time to time by posting a revised, dated version on the Site. By visiting or using the Site, you accept the practices described in this Privacy Policy.

## The USA Patriot Act

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING AN ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account with Celtic Bank, Celtic Bank will ask for your name, mailing address and other information that will allow Celtic Bank to verify your identity. Celtic Bank may also ask to see a driver's license or other identifying documents.

## Information Collected

In connection with your use of the Site, we collect, directly or indirectly, three types of information:

- Information regarding a business ("Business Information");
- Information about the business's owners and principals ("User Information"); and
- General information (i.e. non personally identifiable information such as website-use information) that is automatically collected as you interact with the Site ("General Information").

## Business and User Information

In connection with providing services to Celtic Bank, we may receive Business Information from users, including, but not limited to: business name, mailing address, email address, telephone number, business size, business type, business incorporation date, bank account information, marketplace account information, payment processing procedures, social network data, shipping information, accounting information and vendor service information. We may also receive User Information that consists of personally identifiable information, including, but not limited to: the owner's or principal's name, mailing address, email address, telephone number, date of birth, social security number, and estimated FICO score.

We collect User Information and Business Information from you when you (i) register on the Site, (ii) fill out forms or fields on the Site, (iii) complete an application for a product or service available through the Site or (iv) communicate with us by email, mail, text, telephone, facsimile or other electronic means. In the course of providing services to Celtic Bank, we may collect additional Business Information or User Information from third parties, including, but not limited to, referral partners, identity verification services, mailing list providers, credit bureaus, and publicly-available sources and may combine this information with information we already have about you.

## General Information

We collect General Information from your computer, mobile device or other access device when you use the Site (including downloading and using a mobile application or accessing a mobile optimized site), view content about the Site on a third-party website or open emails or links in emails from us. This General Information

Full Name

Enter Your Email

Subject

SEND

## OUR OFFICE

849 W Wyoming Ave
Hayden
ID
83835

📞  +1 208 215 2537

✉  aaron@offshorestaffingsolutions.com

**Business Loan/Line Of Credit**

| | |
|---|---|
| Company* | |
| First Name | |
| Last Name* | |
| Phone | |
| Mobile | |
| Email | |
| Fico Credit Score | |
| Do you have online Banking with your bank | |
| Can I set your appt with my underwrite? | |
| Will you have computer there with you ? | |
| Lead Status | -None- ▼ |
| Address in full | |
| Description | |

Submit Reset

Copyright © 2019 Offshore Staffing Solutions



**State of California**
**Secretary of State**

**Statement of Information**
(Foreign Corporation)
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

| F |
|---|

**FT75089**

**FILED**

In the office of the Secretary of State
of the State of California

**JAN-16 2018**

| 1. CORPORATE NAME | |
|---|---|
| KABBAGE, INC. | |

| 2. CALIFORNIA CORPORATE NUMBER | C3545305 | This Space for Filing Use Only |
|---|---|---|

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 730 PEACHTREE STREET, SUITE 1100, ATLANTA, GA 30308 | | | |

| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| ONE FERRY BUILDING SUITE 200, SAN FRANCISCO, CA 94111 | | | |

| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 7. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| ROB FROHWEIN | 730 PEACHTREE STREET, SUITE 1100, ATLANTA, GA 30308 | | | |

| 8. SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| SCOTT ASKINS | 730 PEACHTREE STREET, SUITE 1100, ATLANTA, GA 30308 | | | |

| 9. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| JEFF HODGES | 730 PEACHTREE STREET, ATLANTA, GA 30308 | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

10. NAME OF AGENT FOR SERVICE OF PROCESS

CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE

| 11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**  CITY | STATE | ZIP CODE |
|---|---|---|
| | | |

**Type of Business**

12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

ONLINE LENDING

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 01/16/2018 | JILL CILMI | VICE PRESIDENT | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|



**State of California**
**Secretary of State**

**Statement of Information**
(Foreign Corporation)
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

F

**G505969**

# FILED

In the office of the Secretary of State
of the State of California

**MAR-19 2019**

| 1.   CORPORATE NAME |
|---|
| KABBAGE, INC. |

| 2.   CALIFORNIA CORPORATE NUMBER | C3545305 |
|---|---|

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address.  See instructions.)

3.   **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city.  Items 4 and 5 cannot be P.O. Boxes.)

| 4.   STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 730 PEACHTREE STREET. SUITE 1100, ATLANTA, GA 30308 | | | |

| 5.   STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| 6.   MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 7.   CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| ROBERT FROHWEIN | 730 PEACHTREE STREET. SUITE 1100, ATLANTA, GA 30308 | | | |

| 8.   SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| L. SCOTT ASKINS | 730 PEACHTREE STREET. SUITE 1100, ATLANTA, GA 30308 | | | |

| 9.   CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| SCOTT ROSENBERG | 730 PEACHTREE STREET. SUITE 1100, ATLANTA, GA 30308 | | | |

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

| 10.  NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |

| 11.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**  CITY | STATE | ZIP CODE |
|---|---|---|
| | | |

**Type of Business**

| 12.  DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
|---|
| MAIN OPERATING ENTITY |

13.  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 03/19/2019 | L. SCOTT ASKINS | SECRETARY | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|

# Exhibit E



Exhibit F

a little while earlier  about a Small Business Revolving Line Of Credit at 3% and  many other facilities  we can provide..  I'm confident that you will be approved for a high amount with flexible pay back terms. You have no obligation to take the funds, It will be available to you anytime for the next 7 years. I'm sure you will agree that's a great offer. Can we schedule a time to speak in detail ?

# Exhibit G

# IDAHO
Secretary of State

Business   Notary   Liens   Trademark   Franchise Authority

Login

Home

Search

Forms

Cart

Help

## Business Search

off shore staffing

Advanced ∨

Results: 1

| Form Info | | Status | Filing Date | Agent |
|---|---|---|---|---|
| OFFSHORE STAFFING SOLUTIONS, LLC (431158) *Limited Liability Company (ID)* | > | Inactive-Dissolved (Administrative) | 08/25/2014 | STEVEN FORSNESS |

**OFFSHORE STAFFING SOLUTIONS, LLC (431158)**
Limited Liability Company (ID)

Request Certificate

| | |
|---|---|
| Filing Type | Limited Liability Company (ID) |
| Status | Inactive-Dissolved (Administrative) |
| Formed In | IDAHO |
| Term of Duration | Perpetual |
| Principal Address | 649 W WYOMING AVE HAYDEN, ID 83835 |
| Mailing Address | 649 W WYOMING AVE HAYDEN, ID 83835 |
| Initial Filing Date | 08/25/2014 |
| Inactive Date | 12/03/2018 |
| AR Due Date | 08/31/2018 |
| Registered Agent | Noncommercial 0095021 STEVEN FORSNESS 649 W WYOMING AVE HAYDEN, ID 83835 |

View History

EXCEPT FOR BREACHES OF INTELLECTUAL PROPERTY AND CONFIDENTIALITY OBLIGATIONS, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOST DATA, BUSINESS INTERRUPTION, LOSS OF BUSINESS REPUTATION OR GOODWILL.

**Suspension and Termination Right**

Kabbage may suspend or terminate this Agreement or, the Referral Program or your ability to participate in it at any time for any reason.

**Relationship of the Parties**

a. Affiliates and Subcontractors. Referrer shall be responsible for ensuring that all of it and its affiliates, and their respective employees, subcontractors and agents comply with all obligations of this Agreement as if they were a party hereto, and Referrer shall be responsible for any breach of this Agreement by its affiliates, employees, subcontractors and agents in performing any services related to this Agreement.

b. Independent Contractor; No Exclusive Rights. No employment, partnership, joint venture, affiliate, or agent relationship is formed by this Agreement and Referrer shall not represent otherwise. Referrer shall at all times represent itself as an independent contractor. Actual direction and control of the personnel actions and the terms and conditions of employment between Referrer and its employees or agents will at all times be Referrer's responsibility. Referrer does not have any right or authority to assume or create any obligation of any kind (contractual or otherwise), whether express or implied, on behalf of Kabbage, or incur any expenses on behalf of Kabbage. Kabbage shall have no obligation to any party under any representation or warranty given by Referrer, its affiliates, employees, subcontractors, or agents. This referral relationship is non-exclusive, and Kabbage may offer, sell and distribute any of its products or services to any customers in the world, and to appoint any third party to do so, without notice or liability to Referrer.

**General**

a. Assignment. Referrer may not assign or otherwise transfer this Agreement, in whole or part, by operation of law or otherwise. Kabbage may assign this Agreement without restriction or limitation.

b. No Third-Party Beneficiaries. Nothing in this Agreement is intended to, or will, create any third-party beneficiaries, and neither party will make any representation to the contrary.

c. Waiver. No delay or omission by either party to exercise any right or power it has under this Agreement will impair or be construed as a waiver of such right or power. Waiver of any default or failure to enforce any provision of this Agreement must be in writing and shall not affect the waiving party's right to enforce and compel strict performance thereafter.

d. Governing Law; No Jury Trial, Venue; Attorney's Fees. This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of Georgia without reference to its choice of law provisions. Venue shall be exclusively in the state or federal courts of competent jurisdiction located in Atlanta, Georgia. The Parties hereby waive trial by jury. In the event there is a dispute over the terms of this Agreement, the non-prevailing Party shall pay the prevailing Party's reasonable attorneys' fees, costs and expenses.

e. Notices. Any notices given under this Agreement shall be in writing and deemed to have been sufficiently given when delivered by hand or sent by email transmission, overnight courier service or by certified or registered mail, postage and other charges prepaid, to the applicable Party. Kabbage will send any notices to the address submitted with your application. Notices to Kabbage shall be made to: legal@kabbage.com. The date of mailing any written notice will be deemed the date on which such notice is given unless otherwise specified in the notice.

f. Severability. In the event that any provision of this Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of this Agreement shall remain valid and enforceable according to its terms.

g. Entire Agreement; Amendments; Headings. This Agreement, including any schedules, exhibits and attachments hereto, constitutes the final, complete agreement of the parties with respect to its subject matter. By entering into this Agreement, Kabbage and Referrer hereby agree that any prior written or oral agreements(s) entered into between Referrer and Kabbage are hereby terminated and superseded by this Agreement. No changes, amendments or modifications of any of the terms or conditions of this Agreement shall be valid unless made by an instrument in writing signed by both Parties. Headings are for convenience only.

h. Counterparts, Electronic Delivery. This Agreement may be executed in counterparts, each of which when executed and delivered shall constitute an original, but all of which together shall constitute one and the same document.




EXCEPT FOR BREACHES OF INTELLECTUAL PROPERTY AND CONFIDENTIALITY OBLIGATIONS, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOST DATA, BUSINESS INTERRUPTION, LOSS OF BUSINESS REPUTATION OR GOODWILL.

**Suspension and Termination Right**

Kabbage may suspend or terminate this Agreement or, the Referral Program or your ability to participate in it at any time for any reason.

**Relationship of the Parties**



a. Affiliates and Subcontractors. Referrer shall be responsible for ensuring that all of it and its affiliates, and their respective employees, subcontractors and agents comply with all obligations of this Agreement as if they were a party hereto, and Referrer shall be responsible for any breach of this Agreement by its affiliates, employees, subcontractors and agents in performing any services related to this Agreement.

b. Independent Contractor; No Exclusive Rights. No employment, partnership, joint venture, affiliate, or agent relationship is formed by this Agreement and Referrer shall not represent otherwise. Referrer shall at all times represent itself as an independent contractor. Actual direction and control of the personnel actions and the terms and conditions of employment between Referrer and its employees or agents will at all times be Referrer's responsibility. Referrer does not have any right or authority to assume or create any obligation of any kind (contractual or otherwise), whether express or implied, on behalf of Kabbage, or incur any expenses on behalf of Kabbage. Kabbage shall have no obligation to any party under any representation or warranty given by Referrer, its affiliates, employees, subcontractors, or agents. This referral relationship is non-exclusive, and Kabbage may offer, sell and distribute any of its products or services to any customers in the world, and to appoint any third party to do so, without notice or liability to Referrer.

**General**

a. Assignment. Referrer may not assign or otherwise transfer this Agreement, in whole or part, by operation of law or otherwise. Kabbage may assign this Agreement without restriction or limitation.

b. No Third-Party Beneficiaries. Nothing in this Agreement is intended to, or will, create any third-party beneficiaries, and neither party will make any representation to the contrary.

c. Waiver. No delay or omission by either party to exercise any right or power it has under this Agreement will impair or be construed as a waiver of such right or power. Waiver of any default or failure to enforce any provision of this Agreement must be in writing and shall not affect the waiving party's right to enforce and compel strict performance thereafter.

d. Governing Law; No Jury Trial, Venue; Attorney's Fees. This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of Georgia without reference to its choice of law provisions. Venue shall be exclusively in the state or federal courts of competent jurisdiction located in Atlanta, Georgia. The Parties hereby waive trial by jury. In the event there is a dispute over the terms of this Agreement, the non-prevailing Party shall pay the prevailing Party's reasonable attorneys' fees, costs and expenses.

e. Notices. Any notices given under this Agreement shall be in writing and deemed to have been sufficiently given when delivered by hand or sent by email transmission, overnight courier service or by certified or registered mail, postage and other charges prepaid, to the applicable Party. Kabbage will send any notices to the address submitted with your application. Notices to Kabbage shall be made to: legal@kabbage.com. The date of mailing any written notice will be deemed the date on which such notice is given unless otherwise specified in the notice.

f. Severability. In the event that any provision of this Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of this Agreement shall remain valid and enforceable according to its terms.

g. Entire Agreement; Amendments; Headings. This Agreement, including any schedules, exhibits and attachments hereto, constitutes the final, complete agreement of the parties with respect to its subject matter. By entering into this Agreement, Kabbage and Referrer hereby agree that any prior written or oral agreement(s) entered into between Referrer and Kabbage are hereby terminated and superseded by this Agreement. No changes, amendments or modifications of any of the terms or conditions of this Agreement shall be valid unless made by an instrument in writing signed by both Parties. Headings are for convenience only.

h. Counterparts; Electronic Delivery. This Agreement may be executed in counterparts, each of which when executed and delivered shall constitute an original, but all of which together shall constitute one and the same document.

M Gmail

Doe John <scdronevideos@gmail.com>

**Application Form**

Aaron Jones <aaron@offshorestaffingsolutions.com>
To: scdronevideos@gmail.com

Fri, May 24, 2019 at 9:30 AM

Application Form: https://www.kabbage.com?refid=TCG_OC_JA

# Exhibit H

1
2
3
4
5
6
7  UNITED STATES DISTRICT COURT

8  SOUTHERN DISTRICT OF CALIFORNIA

9

10 | CLAUDINE OSGOOD, an individual    Case No.: 16CV2415 GPC BGS
   | ANTON EWING, an individual,
11 |                                   **ORDER GRANTING IN PART AND**
12 |                      Plaintiff,   **DENYING IN PART PLAINTIFFS'**
   |                                   **FOURTH MOTION FOR DEFAULT**
13 | v.                                **JUDGMENT**
14 | Main Streat Marketing, LLC, a Utah
   | limited liability company; Jerrod Robker,
15 | an individual aka Jerrod McAllister;  [Dkt. No. 80.]
   | DOES 1-100; ABC CORPORATIONS 1-
16 | 100; XYZ, LLC's 1-100,
17 |                      Defendants.
18

19     Before the Court is Plaintiffs Anton Ewing and Claudine Osgood's fourth motion

20 for default judgment pursuant to Federal Rule of Civil Procedure ("Rule") 55(b).  (Dkt.

21 No. 80.) No opposition has been filed.  Based on the reasoning below, the Court GRANTS

22 in part and DENIES in part Plaintiffs' fourth motion for default judgment pursuant to Rule

23 55(b).

24
25
26
                                    1
27
28

1  violations of section 632 as authorized by section 637.2"); *Lieberman v. KCOP*

2  *Television, Inc.*, 110 Cal. App. 4th 156, 167 (2003) ("to recover statutory damages for

3  violation of section 632, Lieberman was not required to prove actual damages resulting

4  from the recording. He may recover up to $5,000 for each incident") (citing *Ribas*, 38

5  Cal. 3d at 365). Accordingly, the Court concludes that the 2017 CIPA amendment to

6  section 637.2 was a clarification and therefore, the $5,000 per violation" applies to

7  Plaintiffs' CIPA claim. Because Plaintiff Ewing is entitled to $5,000.00 "per violation",

8  the Court awards him $25,000 for the five calls that violated CIPA.

9                                    **Conclusion**

10        Based on the above, the Court GRANTS in part and DENIES in part Plaintiffs'

11  fourth motion for default judgment. The Court GRANTS Plaintiff Ewing's motion for

12  default judgment in the amount of $15,000 under the TCPA and $25,000 under the CIPA.

13  The Court DENIES Plaintiff Osgood's motion for default judgment. The hearing date set

14  for August 24, 2018 shall be **vacated.**

15        IT IS SO ORDERED.

16  Dated:  August 20, 2018

17                                    Hon. Gonzalo P. Curiel
18                                    United States District Judge

19

20

21

22

23

24

25

26

27                                              11

28

16CV2415 GPC BGS

Exhibit I

136 S. Ct. 663, *673; 193 L. Ed. 2d 571, **584; 2016 U.S. LEXIS 846, ***22

*F. 3d, at 874.* A Navy representative noted the importance of ensuring that the message recipient list be "kosher" (*i.e.,* that all recipients had consented to receiving messages like the recruiting text), and made clear that the Navy relied on Campbell's **[*674]** representation that the list was in compliance. App. 43. See also *ibid.* (noting that Campbell itself encouraged the Navy to use only an opt-in list in order to meet national and local law requirements). In short, the current record reveals no basis for arguing that *Gomez*'s right to remain message-free was in doubt or that Campbell complied with the Navy's instructions.

We do not overlook that subcontractor Mindmatics, not Campbell, dispatched the Navy's recruiting message to unconsenting recipients. But *HN13*[⬆] *LEdHN[13]*[⬆] [13] the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for *TCPA* violations. *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574 (2013). The Ninth Circuit deferred to that ruling, *768 F. 3d, at 878,* and we have no cause to question it. Campbell's vicarious liability for Mindmatics' conduct, however, in no way advances Campbell's **[***24]** contention that it acquired the sovereign's immunity from suit based on its contract with the Navy.

* * *

For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is affirmed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**Concur by:** THOMAS

# Concur

Justice **Thomas,** concurring in the judgment.

The Court correctly concludes that an offer of complete relief on a claim **[**585]** does not render that claim moot. But, in my view, the Court does not advance a sound basis for this conclusion. The Court rests its conclusion on modern contract law principles and a recent dissent concerning *Federal Rule of Civil Procedure 68.* See *ante, at ___ - ___, 193 L. Ed. 2d, at 579-581.* I would rest instead on the common-law history of tenders. That history—which led to *Rule 68*—demonstrates that a mere offer of the sum owed is

insufficient to eliminate a court's jurisdiction to decide the case to which the offer related. I therefore concur only in the judgment.

I

The text of Article III's case-or-controversy requirement, that requirement's drafting history, and our precedents do not appear to provide sufficiently specific principles to resolve this case. When faced with such uncertainty, it seems particularly important for us to look to how **[***25]** courts traditionally have viewed a defendant's offer to pay the plaintiff's alleged damages. That history—which stretches from the common law directly to *Rule 68* and modern settlement offers—reveals one unbroken practice that should resolve this case: A defendant's offer to pay the plaintiff—without more—would not have deprived a court of jurisdiction. Campbell-Ewald's offers thus do not bar federal courts from continuing to hear this case.

A

Modern settlement procedure has its origins in the law of tenders, as refined in the 18th and 19th centuries. As with much of the early common law, the law of tenders had many rigid formalities. These formalities make clear that, around the time of the framing, a mere offer of relief was insufficient to deprive a court of jurisdiction.

At common law, a prospective defendant could prevent a case from proceeding, but he needed to provide substantially more than a bare offer. A "mere proposal or proposition" to pay a claim was inadequate to end a case. A. Hunt, A Treatise on the Law of Tender, and Bringing Money Into **[*675]** Court §§1-2, 3-4 (1903) (Hunt) (citing cases from the 1800's). Nor would a defendant's "readiness and an ability to pay the money" suffice to end a case. **[***26]** *Holmes* v. *Holmes,* 12 Barb. 137, 144 (N. Y. 1851). Rather, a prospective defendant needed to provide a "tender"—an offer to pay the entire claim before a suit was filed, accompanied by "actually produc[ing]" the sum "at the time of tender" in an "unconditional" manner. M. Bacon, A New Abridgment of the Law, 314-315, 321 (1856) (citing cases from the early 1800's).

Furthermore, in state and federal courts, a tender of the amount due was deemed "an admission of a liability" on the cause of action to which the tender related, so any would-be defendant who tried to deny liability could not effectuate a tender. Hunt §400, at 448; see *Cottier v. Stimpson, 18 F. 689, 691 (Ore. 1883)* (explaining that a tender constitutes "an admission of the cause of

2018 U.S. App. LEXIS 26883, *24

Congress's 2015 amendment to the *TCPA* provides additional information about Congress's views on the scope of the definition of ATDS. After the FCC issued its 2015 order, Congress added language to *§ 227(b)(1)(A)(iii)*, exempting the use of an ATDS to make calls "solely to collect a debt owed to or guaranteed by the United States." *Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588* (codified at *47 U.S.C. § 227(b)(1)(A)(iii)*). Like the exception allowing the use of an autodialer to make calls "with the prior express consent of the called party," this debt collection exception demonstrates that equipment that dials from a list of individuals who owe a debt to the United States is still an ATDS but is exempted from the *TCPA*'s strictures. Moreover, in amending this section, Congress left the definition of ATDS untouched, even though the FCC's prior [*25] orders interpreted this definition to include devices that could dial numbers from a stored list. We "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation." *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1072 (9th Cir. 2002)*. Because we infer that Congress was aware of the existing definition of ATDS, its decision not to amend the statutory definition of ATDS to overrule the FCC's interpretation suggests Congress gave the interpretation its tacit approval. *See Lorillard v. Pons, 434 U.S. 575, 580, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978)* ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

*HN8*[⬆] Despite the ambiguity of the statutory definition of ATDS, reading the definition "in [its] context and with a view to [its] place in the overall statutory scheme," *Brown & Williamson Tobacco Corp., 529 U.S. at 133*, we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read *§ 227(a)(1)* to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to [*26] store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers.[8]

*HN9*[⬆] We also reject *Crunch*'s argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "*automatic* telephone *dialing* system," Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control. *47 U.S.C. § 227(a)(1)* (emphasis added); *see ACA Int'l, 885 F.3d at 703* ("[A]uto' in autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' *47 U.S.C. § 227(a)(1)*—would seem to envision non-manual dialing of telephone numbers."). Common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions. Congress was clearly aware that, at the very least, a human has to flip the switch on an ATDS. *See The Automated Telephone Consumer Protection Act of 1991, Hearing Before the Subcomm. on Commc'ns of the Comm. on Commerce, Sci., and Transp.*, 102nd Cong. 15 (1991) [*27] (statement of Robert Bulmash, President, Private Citizen, Inc.) (describing a pitch for autodialers in a telemarketing magazine as stating: "You come home from work[, and] turn on the machine, just like turning on a radio."). *Crunch* does not dispute that the Textmunication system dials numbers automatically, and therefore it has the automatic dialing function necessary to qualify as an ATDS, even though humans, rather than machines, are needed to add phone numbers to the Textmunication platform.

**D**

Because we read *§ 227(a)(1)* to provide that the term

---

assumption that a device must be able to generate random or sequential numbers in order to qualify as an ATDS. *Dominguez ex rel. Himself v. Yahoo, Inc., 894 F.3d 116, 120 (3d Cir. 2018)* (stating, without explanation, that the plaintiff's claims against Yahoo failed because he "cannot point to any evidence that creates a genuine dispute of fact as to whether [Yahoo's device] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"). In making this assumption, the Third Circuit failed to resolve the linguistic problem it identified in an unpublished opinion in the same case, where it acknowledged that "it is unclear how a number can be *stored* (as opposed to *produced*) using 'a random or sequential number generator.'" *Dominguez v. Yahoo, Inc., 629 F. App'x 369, 372 n.1 (3d Cir. 2015)*. Because the Third Circuit merely avoided the interpretive questions raised by the statutory definition of ATDS, its published opinion is unpersuasive.

---

limited to dialing wholly random or sequential blocks of numbers, but could be configured to dial a curated list.

[8] Therefore, we decline to follow the Third Circuit's unreasoned

Exhibit J

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

JAMES EVERETT SHELTON,      :    CIVIL CASE
                            :
        Plaintiff(s)        :    Case No.  2:18-cv-02071
                            :
  v.                        :    Philadelphia, Pennsylvania
                            :    May 1, 2019
FAST ADVANCE FUNDING, LLC   :    Time 9:15 a.m. to 9:59 p.m.
                            :
        Defendant(s),       :
. . . . . . . . . . . . .

TRANSCRIPT OF HEARING AND ORAL ARGUMENTS
BEFORE THE HONORABLE CHAD F. KENNEY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:          Bryan Anthony Reo, Esq.
                            Reo Law LLC
                            PO Box 5100
                            Mentor, OH 44061

For Defendant:              John P. Hartley, Esq.
                            Complete Business Solutions Group
                            20 N. 3rd Street
                            Philadelphia, PA 19106

Court Recorder:             Christopher Kurek
                            Clerk's Office
                            U.S. District Court

Transcription Service:      Precise Transcripts
                            45 N. Broad Street
                            Ridgewood, NJ 07450

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1            MR. HARTLEY:  I do agree with you Your Honor.

2            THE COURT:  Right.

3            MR. HARTLEY:  It's just that --

4            THE COURT:  So, where were you asking for

5     discovery on that issue all along, where was your client

6     all along to participate in this case?  That's a question

7     you have to ask your client, I wondered all along where

8     your client was in this case.  Now they want to raise a

9     legal issue that requires some discovery, requires to ask

10    for discovery, now you come in and say, Judge it's, it's a

11    -- I want, I want my record, you had all this time to

12    create your record and make this argument, all this time

13    for me to, potentially, to decide this on summary

14    judgment, to go through all the, to go through all the law

15    and to make a decision, and now you don't have your

16    record.  And, that's not on me, that's not on the Court,

17    that's on your client.  And, I could see the attitude of

18    your client through your attorney in the Rule 16, that I'm

19    not going to just -- I'm, I'm -- we're not doing anything

20    with this because we don't believe in their case and it

21    looked as if they were like, because they're serial

22    litigant.  Well, the only way this, this act is going to

23    get any teeth in it at all is through a serial litigant.

24    So, I just don't understand why your, your client took

25    that approach and it's interesting to me from a visual

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

May 10, 2019

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

May 10, 2019